**William MEREDITH, Appellant,**

v.

**JEFFERSON COUNTY PROPERTY VALUATION ADMINISTRATOR; Special Fund; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 1999–SC–0592–WC.

Supreme Court of Kentucky.

May 18, 2000.

William Reeder Kenealy, Kenneth L. Sales, Kathleen M. Flynn, Louisville, Counsel for Appellant.

Kenneth Lance Lucas, Sutton, Hicks, & Lucas, Florence, Counsel for Appellee Jefferson County Property Valuation Administrator.

David R. Allen, Labor Cabinet—Special Fund, Frankfort, Counsel for Appellee Special Fund.

## OPINION OF THE COURT

This workers' compensation appeal concerns whether an injury which was sustained by a field representative of the Kentucky Revenue Cabinet while in a restaurant, waiting for a business appointment to begin, was compensable.

Claimant was employed by the Jefferson County Property Valuation Administrator's (PVA's) office and served as a field representative for the Kentucky Revenue Cabinet. His primary duties were to travel to various local banks, to inventory the contents of safe deposit boxes in conjunction with the administration of estates, and to release assets held by the bank. He reported to his office at the beginning of each work day and obtained a list of appointments from his supervisor. Then, he met throughout the day with various administrators, executors, and attorneys at various banks and conducted the inventories. He testified that his work hours were from 8:00 a.m. until 4:00 p.m. and that he was free to take breaks between appointments. There was no evidence to the contrary.

On the morning of October 28, 1996, claimant reported to the PVA's office shortly before 8:00 and received a list of his appointments for the day. He testified that the first appointment was scheduled for 9:00 and that he arrived at the bank sometime between 8:30 and 9:00. The bank did not open until 9:00. He testified that he was unable to attract the attention of anyone to let him inside the bank, and the individual he was to meet had not yet arrived, so he drove to a fast-food restaurant which was located approximately 5–10 minutes away for a cup of coffee. He testified that he had also planned to go over his notes for the appointment. As claimant carried his order from the counter to a table, he slipped and fell, sustaining a serious back injury which required surgery.

At the time of the hearing, claimant suffered from residual foot drop. He was required to wear a metal brace at all times

and to use a cane. Also, he could no longer drive a car due to leg pain and the effects of the medication he used. It was undisputed that he had sustained a substantial permanent functional impairment from his injury.

The Administrative Law Judge (ALJ) noted that claimant's work history demonstrated an admirable work ethic and that it was clear that he had sustained a significant occupational disability as a result of the fall. The ALJ indicated, however, that the primary issue was whether the injury arose out of and in the course of the employment. Considerations included whether the injury arose as a natural consequence of performing a duty for his employer and whether the time, place, and circumstances of the accident indicated that his employment was the cause. *City of Prestonsburg v. Gray,* Ky., 341 S.W.2d 257 (1960); *Louisville and Jefferson County Air Board v. Riddle,* Ky., 301 Ky. 100, 190 S.W.2d 1009 (1945). After reviewing the evidence, the ALJ noted that claimant chose to travel to a restaurant which was 5–10 minutes away from the bank rather than to wait for the bank to open. The ALJ determined that the trip for coffee was an identifiable deviation from the business purpose for which his employer had sent him to the bank and that it constituted a personal errand. For that reason, the ALJ concluded that the injury occurred outside the course of the employment and was not compensable.

Claimant appealed; however, the Workers' Compensation Board (Board) affirmed in a two-to-one decision. A dissenting opinion took issue with the majority's view that had the injury occurred in a restaurant close to the bank, it might have come within the personal comfort doctrine and, therefore, have been compensable. The dissent indicated that to view the trip for coffee as an abandonment of the employment failed to take into account the nature of claimant's duties. The dissent concluded that the injury should have been compensable. The Court of Appeals affirmed,

also in a two-to-one decision, with the dissent adopting the dissenting opinion from the Board. This appeal by the claimant followed.

As a field representative, claimant's duties included traveling to various banks. The evidence indicated that he had already reported for work and had begun to perform his duties when he was injured; therefore, we view the facts presented by this appeal as involving aspects of both a business trip and the personal comfort doctrine. As a rule, a deviation from a business trip for personal reasons takes the worker out of the course of the employment unless the deviation is so small that it may be disregarded as insubstantial. Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 17 (1999). For that reason, an injury sustained during a personal mission generally is viewed as having occurred outside the course of the employment; however, under certain circumstances, an injury resulting from acts by a worker which minister to his personal comfort while at work may be considered related to work pursuant to the doctrine of comfort and convenience. *Id.* at § 21. Pursuant to this doctrine, workers are deemed not to have left the course of their employment while ministering to personal needs, provided that the departure from the employment is not so great that an intent to abandon the job temporarily may be inferred or that the manner of the departure is not so unreasonable that it cannot be considered an incident of the employment. *Id.* Although workplace injuries which occur shortly before or after the usual working hours generally are considered to have occurred in the course of employment, the course of employment is considered to be suspended if a worker, having arrived early, takes a coffee break before beginning to work. *Id.* at § 21.06(1)(d). Larson indicates, however, that during an enforced hiatus in work, "a certain amount of wandering around and even undertaking what otherwise might seem to be distinctly per-

sonal activities" has been permitted in a number of jurisdictions unless there was evidence that the worker's duties required him to remain in a particular place. *Id.* at § 21.07(4). Where an injury results from an activity performed during an enforced hiatus from work, the connection to work derives from "a combination of known human nature and the particular circumstances and practices of the employment." *Id.*

■ In Kentucky, application of the comfort and convenience doctrine has been based upon the belief that where an injury was caused by a danger inherent in the workplace or resulted from a risk peculiar to or increased by the employment, the fact that the injury occurred because the worker was ministering to his own comfort and convenience while at work should not render the resulting disability noncompensable. Where the worker has proved that a nexus existed between some danger or risk associated with the employment and the injury which has caused his occupational disability, compensation benefits have been allowed. See, for example, *Blue Diamond Coal Co. v. Walters,* Ky., 287 S.W.2d 921 (1956) (the worker was injured while running to get out of the rain and to procure a rain garment so he could comfortably continue to work); *Harlan Collieries Co. v.. Johnson,* Ky., 308 Ky. 89, 212 S.W.2d 540 (1948) (the worker, while getting his mining lamp from the employer's shed in preparation for work, mistook a bucket of acid for water, drank some, and later died); *Jefferson County Stone Co. v. Bettler,* Ky., 304 Ky. 87, 199 S.W.2d 986 (1947) (the worker, on duty at all times, died in a fire in the cottage where he lived on the work premises); *Codell Construction Co. v. Neal,* Ky., 258 Ky. 603, 80 S.W.2d 530 (1935) (the worker, a night watchman on a road construction project, died as a result of a fire in the shack which he used to warm himself between rounds). We have determined that the relative contribution of personal cause and employment cause is not dispositive, so long as a danger inherent in the employment has contributed to causing the injury. See, *Clear Fork Coal Co. v. Roberts,* Ky., 279 S.W.2d 797 (1955).

■ Turning to the present facts, we note that claimant had reported for work, obtained his daily assignments, but reached his business destination some time before his first scheduled appointment; thus, he was unable to begin performing the duties for which the trip was made. The question therefore becomes whether the personal mission to obtain a cup of coffee, while waiting for the bank to open and for the individuals with whom he had the 9:00 appointment to arrive, constituted such a substantial deviation from the business purpose of the trip that an injury which occurred during the personal mission was not covered by the personal comfort doctrine.

The ALJ, a majority of the Board, and a majority of the Court of Appeals concluded that the distance between the bank and the restaurant where claimant chose to go was great enough that the deviation from the business purpose of claimant's trip must be viewed as substantial. We agree that it is not unreasonable to place some limit on the distance a worker may travel in pursuit of personal comfort and still be viewed as working, particularly in those instances where the accident occurs while the worker is traveling. In the instant case, however, the accident did not occur while claimant was traveling between the bank and the restaurant, and there is no evidence that the distance between the restaurant and the bank had anything to do with claimant's slip and fall at the restaurant. The accident could just as easily have occurred had the restaurant been located next door to the bank or in the same building. For that reason, although distance may be a significant factor in deciding other claims, we are not persuaded that the distance between the bank and the restaurant should be dispositive on these particular facts.

It is apparent that the nature of claimant's work involved periods of activity but also involved periods of waiting for appointments to begin. In other words, the nature of his work included periods of enforced hiatus. There was no evidence that claimant's employer restricted his activities during such periods or that he was prohibited from taking a coffee break if there was time to spare between appointments. Finally, the type of activity in which he was engaged when he was injured was not so unreasonable that it must be viewed as a departure from his duties. Under those circumstances, we are persuaded that claimant's injuries should be viewed as arising out of and in the course of his employment and, therefore, to be compensable.

The decision of the Court of Appeals is hereby reversed, and the claim is remanded to the ALJ for the entry of an award.

LAMBERT, C.J., and JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion in which GRAVES, J., joins.

COOPER, Justice, Dissenting.

In all of the "personal comfort" cases cited by the majority in support of its decision to reverse the ALJ, the Board and the Court of Appeals, *viz: Blue Diamond Coal Co. v. Walters*, Ky., 287 S.W.2d 921 (1956), *Clear Fork Coal Co. v. Roberts*, Ky., 279 S.W.2d 797 (1955), *Harlan Collieries , Co. v. Johnson*, 308 Ky. 89, 212 S.W.2d 540 (1948), *Jefferson County Stone Co. v. Bettler*, 304 Ky. 87, 199 S.W.2d 986 (1947), and *Codell Constr. Co. v. Neal*, 258 Ky. 603, 80 S.W.2d 530 (1935), the injury occurred on the employer's premises. Here, the employee was injured when he slipped and fell in a McDonald's restaurant where he had gone to obtain a cup of coffee because he had arrived too early at the bank where he was to perform his work duties. As always in this type of case, the issue is whether the injury was

work-related, *i.e.*, whether it "ar[ose] out of" and "in the course of" the claimant's employment. *Seventh St. Rd. Tobacco Warehouse v. Stillwell*, Ky., 550 S.W.2d 469, 470 (1976).

> The words "arising out of" the employment ... refer to the cause of the accident, and the term "in the course of" the employment to the time, place and circumstances under which it occurred.

*Harlan–Wallins Coal Corp. v. Foster*, Ky., 277 S.W.2d 14, 15 (1955).

Here, the injury occurred not at a place where the employee was to perform his work duties, but at a public restaurant where he encountered a risk shared by the general public and which was totally unrelated to his employment.

> An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.

A. Larson and L. Larson, 1 *Larson's Workers' Compensation* § 19 .00 (Desk ed.1997). The same treatise also states that employees with no fixed routes or destinations who go on personal errands "may be held to resume employment immediately upon completion of a personal visit and upon starting back in the general direction of their business obligations." *Id.* § 19.60.

In *Scott Tobacco Co. v. Cooper*, 258 Ky. 795, 81 S.W.2d 588 (1934), the claimant was a traveling salesman who arrived in Paintsville on Sunday night intending to commence his work early the next morning. He went to dinner that night at a restaurant of his own choosing, and while returning to his place of lodging, was struck in the eye by a pebble thrown up by a passing vehicle. Our predecessor Court held that the injury was not work-related because the claimant had already arrived at his work destination without incident and, until his work duties began on the

following day, "he was a free man, and could eat when and where he chose." *Id.*, 81 S.W.2d at 593.

Likewise, Meredith arrived at his work destination without incident, but too early to begin his work duties. It was his choice to leave his work destination, thus to deviate from the course of his employment and embark on a personal errand of his own. "[H]e was a free man, and could [drink coffee] when and where he chose." Whether a deviation which takes a worker away from his place of employment is substantial or "so small as to be disregarded as insubstantial," Larson, *supra*, § 19.00, is a factual issue for the ALJ. The ALJ found that Meredith's deviation was not so small as to be disregarded as insubstantial. The evidence does not compel a contrary finding, so that finding is conclusive of that issue. *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985). Thus, until such time as he returned to his place of work, Meredith was outside the course of his employment and the ALJ, the Board and the Court of Appeals all correctly concluded that his injury was not work-related.

GRAVES, J., joins this dissenting opinion.